SCOTT *v.* SLAUGHTER.

5-3142                                          373 S. W. 2d 577

Opinion delivered December 16, 1963.
[Rehearing denied Jan. 20, 1964.]

*Daggett & Daggett,* for appellant.

*John D. Thweatt, Cooper Thweatt,* for appellee.

JIM JOHNSON, Associate Justice. This appeal involves the respective riparian rights of appellant L. W. Scott, the upper proprietor, and appellee H. H. Slaughter, the lower proprietor, in the waters of Roc Roe Bayou.

Appellant is the owner of approximately 1,440 acres of land lying immediately north of a tract of approximately 960 acres of land owned by appellee in Prairie and Monroe Counties.

Roc Roe Bayou heads at Roc Roe Lake near the north boundary of appellant's land and courses in a southerly direction through the lands of both appellant and appellee. Except for its own fairly insignificant watershed, Roc Roe Bayou is fed by the waters of White River which fills Roc Roe Lake and from there enters Roc Roe Bayou. In addition to the White River waters, Roc Roe Bayou is fed by a tributary, Honey Creek, which enters Roc Roe Bayou from the northwest at a point on appellant's land about a mile from the bayou's head and about one-half mile north and upstream from appellee's north property line. The bayou then meanders southerly

some twenty miles to a point near the community of Roe, Arkansas, where it empties back into White River.

Without obstruction the waters of White River running through Roc Roe Lake would enter Roc Roe Bayou when the river reached a stage of 17 feet on the Clarendon gauge. Honey Creek has a rather large watershed of some 18,500 acres. The waters from this creek empty into Roc Roe Bayou.

Appellant has constructed three dams on the portion of Roc Roe Bayou which traverses his land. We here refer to them as the north, middle and south dams. The middle dam was constructed across the bayou at a point about 100 feet north of and upstream from the confluence of Honey Creek with Roc Roe Bayou. This dam was constructed with a spillway which permitted all river water above a stage of 19 feet on the Clarendon gauge to pass over the dam except the comparatively slight amount of water necessary to raise the level of the water behind the dam to the river level. The north dam is a low water dam and was constructed at the entrance of the White River waters into Roc Roe Bayou at the point where Roc Roe Bayou connects to Roc Roe Lake. This dam is also constructed to a height which permits the river waters to flow over it when a stage of 19 feet is reached on the Clarendon gauge. Its purpose is to trap and impound the river water between the north dam and the middle dam so as to prevent the northward drainage of the impounded waters when the water level of White River, and in turn Roc Roe Lake, is below 19 feet.

The south dam is several feet lower than the middle dam and was constructed across the bayou at a point on appellant's land about one-half mile south and downstream from the confluence of Honey Creek and about 150 feet from the north boundary line of appellee's lands.

Roc Roe Bayou as well as Honey Creek are somewhat intermittent streams and run dry during periods of little rainfall.

Both appellant and appellee operate commercial hunting and fishing facilities on their respective prem-

ises. Appellee does not now impound water on his premises. This action was brought by appellee contending that appellant's impoundments constitute an unreasonable use of the water, depriving him of waters which otherwise would have flowed through his lands, and prayed that a mandatory injunction issue requiring removal of the dams and that he be given judgment for damages.

Trial upon the merits resulted in a finding for appellee. This decree was vague as to specific relief but was clear as to the principal points in controversy. The court found that appellant's use of the water was unreasonable and directed the removal or lowering of the dams. All claims for damages were denied. From such decree comes this appeal. Appellee does not cross appeal from that part of the decree denying damages.

For reversal appellant urges that the trial court erred in holding that appellant's use of the water was unreasonable.

Prior to the decision of this court in *Harris* v. *Brooks*, 225 Ark. 436, 283 S. W. 2d 129, there was considerable confusion as to the law in this jurisdiction relative to the right to use water. In that case the court determined that the *Reasonable Use Theory* should control. This theory was explained as follows:

"This theory appears to be based on the necessity and desirability of deriving greater benefits from the use of our abundant supply of water. It recognizes that there is no sound reason for maintaining our lakes and streams at a normal level when the water can be beneficially used without causing unreasonable damage to other riparian owners. The progress of civilization, particularly in regard to manufacturing, irrigation, and recreation, has forced the realization that a strict adherence to the uninterrupted flow doctrine placed an unwarranted limitation on the use of water, and consequently the courts developed what we now call the reasonable use theory. This theory is of course subject to different interpretations and limitations. In 56 Am. Jur., page 728, it is

stated that "The rights of riparian proprietors on both navigable and unnavigable streams are to a great extent mutual, common, or correlative. The use of the stream or water by each proprietor is therefore limited to what is reasonable, having due regard for the rights of others above, below, or on the opposite shore. In general, the special rights of a riparian owner are such as are necessary for the use and enjoyment of his abutting property and the business lawfully conducted thereon, qualified only by the correlative rights of other riparian owners, and by certain rights of the public, and they are to be so exercised as not to injure others in the enjoyment of their rights.' It has been stated that each riparian owner has an equal right to make a reasonable use of waters subject to the equal rights of other owners to make the reasonable use (*U. S.* v. *Willow River Power Co.,* 324 U. S. 499, 65 S. C. 761, 89 L. Ed. 1101). The purpose of the law is to secure to each riparian owner equality in the use of water as near as may be by requiring each to exercise his right reasonably and with due regard to the rights of others similarly situated. (*Meng* v. *Coffey,* 67 Neb. 500, 93 N. W. 713, 108 Am. St. Rep. 697)."

While this court unhesitatingly embraced the reasonable use theory in the *Harris* case, *supra,* it took occasion to caution "that we are not necessarily adopting all the interpretations given it [the reasonable use theory] by the decisions of other states, and that our own interpretation will be developed in the future as occasions arise." However, the following general rules and principles were declared to be the law in this state:

"(a) The right to use water for strictly domestic purposes—such as for household use—is superior to many other uses of water—such as for fishing, recreation and irrigation.

"(b) Other than the use mentioned above, all other lawful uses of water are equal.

"Some of the lawful uses of water recognized by this state are: fishing, swimming, recreation, and irrigation.

"(c) When one lawful use of water is destroyed by another lawful use the latter must yield, or it may be enjoined.

"(d) When one lawful use of water interferes with or detracts from another lawful use, then a question arises as to whether, under all the facts and circumstances of that particular case, the interfering use shall be declared unreasonable and as such enjoined, or whether a reasonable and equitable adjustment should be made, having due regard to the reasonable rights of each."

From a careful review of the voluminous record presented in the present not uncomplicated case we have determined that an equitable application here of the rules set out above demands that appellant's north and middle dams be lowered to a level which will permit the waters from White River and/or Roc Roe Lake, after filling the reservoir created by the dams, to pass over such dams or spillways when the Clarendon gauge shows a stage in excess of 17 feet. As to the south dam, it is virtually undisputed that it only requires a trace of rain to fill the reservoir behind this dam and that once full all water falling in the Honey Creek watershed passes over the spillway and through appellee's land—add to this the increased flow which will result from lowering the north and middle dams—the conclusion cannot be escaped that the south dam need not be lowered.

To the extent here stated, it follows that the trial court's decree is modified and affirmed. Accordingly the cause will be remanded for the entry of orders consistent with this opinion.

McFaddin, J., not participating.